**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA,     ) | |
|    ) | |
|    Plaintiff/Respondent,     ) | Criminal Action No. |
|    ) | 5:17-0036-JMH-MAS |
| v.     ) | and |
|    ) | Civil Action No. |
| MIGUEL DAVID AYALA,     ) | 5:19-0442-JMH-MAS |
|    ) | |
|    Defendant/Movant.     ) | |
|    ) | |

**REPORT & RECOMMENDATION**

Defendant Movant Miguel David Ayala ("Ayala") has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. [DE 96]. Ayala alleges violations of his constitutional rights and ineffective assistance of counsel. The United States responded in opposition [DE 105], and Ayala replied [DE 109]. After reviewing the record in its entirety, the Court recommends Ayala's motion be denied.

## I.   RELEVANT FACTUAL BACKGROUND

On May 25, 2017, after a three-day trial, a jury convicted Ayala of one count of robbery of a pharmacy, in violation of 18 U.S.C. § 2189(a)(1), and one count of possession with the intent to distribute hydrocodone, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1). [DE 20 and 59]. The trial court sentenced Ayala to 150 months imprisonment on each count to run concurrently, followed by 3 year term of supervised release. [DE 70].

Ayala subsequently appealed his conviction. [DE 71]. The Sixth Circuit affirmed his conviction. [DE 90]. Ayala raised an ineffective assistance of counsel claim in his direct appeal, but the Sixth Circuit held that the record before it was "insufficient to resolve [the ineffective

1

assistance of counsel claims], Ayala's claim should properly be the subject of collateral review pursuant to 28 U.S.C. § 2255." [DE 90 at Page ID # 815; USCA 17-6023, *United States v. Miguel Ayala*, DE 44]. Ayala then timely filed the present § 2255 motion.

## II.   ANALYSIS

### A.   INEFFECTIVE ASSISTANCE OF COUNSEL

To succeed on a § 2255 motion, petitioner "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). Ayala alleges ineffective assistance of counsel against two prior attorneys: Thomas Lyons and Jessica Winters.

Ineffective assistance of counsel, if proven, could constitute a constitutional error. *Strickland v. Washington*, 466 U.S. 668, 685-87 (1984). To prevail on a claim of ineffective assistance of counsel, petitioner must prove (1) that their counsel's performance was deficient, and (2) that petitioner suffered prejudice due to said deficiency. *Id*. at 687. Deficient performance is shown only through proving "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. A showing of prejudice requires a "reasonable probability that, but for counsel's unprofessional errors, the judicial outcome would have been different." *Id*. at 694-95. Ayala must adequately fulfill both components of the analysis, but courts need "not address both components of the deficient performance and prejudice inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (citing *Strickland*, 466 U.S. at 697).

### B.   TRIAL ATTORNEY THOMAS LYONS

Ayala claims his trial counsel Thomas Lyons ("Lyons") provided ineffective assistance of counsel during his pretrial and trial representation of Ayala by failing to: (1) request a competency

2

evaluation; (2) object to the admission of a recorded phone call between Ayala and his wife; (3) provide certain discovery materials to Ayala; (4) investigate the cell phone records evidence; (5) object to the deliberation of the jury in his presence; and (6) object to the in-court identification of him by a witness. For the reasons stated below, Ayala has failed to show that Lyons' representation "fell below an objective standard of reasonableness" and/or that the judicial outcome of his trial and sentencing would have been different; thus, his claims of ineffective assistance of counsel by Lyons must be denied.

### 1. Competency Evaluation

Ayala argues that "someone needed to determine if [he] was even culpable" and if he "could legally be held responsible for such an alleged crime." [DE 96 at Page ID # 845]. Ayala claims Lyons was ineffective for failing to identify he his alleged mental incompetency and request a psychological evaluation to determine his competency to stand trial and assess his ability to have criminal responsibility at the time of the crime.

A defendant must possess "sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding" and "a rational as well as a factual understanding of the proceedings against him" to be found competent to stand trial. *Dusky v. United States*, 362 U.S. 402 (1960). That standard was codified 18 U.S.C. § 4241(a), which states:

> If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.

18 U.S.C. § 4241(a). The Supreme Court has "held that the question of mental competency at the time of trial [can] be raised by a motion to vacate sentence under Section 2255, Title 28 United States Code." *United States v. Thomas*, 291 F.2d 478, 480 (6th Cir. 1961)(discussing *Bishop v. United States*, 350 U.S. 961 (1956)). Raising such a claim in a § 2255 motion does not, however,

entitle the petitioner to a competency evaluation at that time or even a hearing on his § 2255 motion if the "files and records of the case conclusively show that the prisoner is entitled to no relief[.]" *Id*.

In his Affidavit attached to the United States' Response to the § 2255 petition, Lyons states he "never observed any indicia of competency issues in his interactions with Ayala[.]" [DE 105-1, Aff. of Lyons, ¶ 8, at Page ID # 896]. Lyons describes Ayala as "articulate, lucid, [and] oriented" with a "firm grasp of the case against him." [DE 105-1, Aff. of Lyons, ¶ 8, at Page ID # 896]. Lyons recalled that Ayala "intelligently discussed and strategized with counsel regarding his defense, and understood fully the risks of proceeding to trial." [DE 105-1, Aff. of Lyons, ¶ 8, at Page ID # 896]. Lyons stressed to the Court at sentencing that Ayala is "a pretty savvy guy" who could "probably hold a job, if he puts his mind to it." [DE 79 at Page ID # 345]. Ayala affirmed his understanding of the procedure and his rights at his initial appearance, his arraignment, and his sentencing. [Transcripts at DE 79 (Sentencing); 80 (Arraignment); 81 (Initial Appearance)]. He also made a statement on his own behalf at sentencing, expressing remorse for the robbery: "It's wrong, and no one deserves to have a gun pointed in their face, period. The trial certainly was—Mr. Lyon's correct, it was definitely a life-altering event. Leaving WestCare definitely changed the course of my life. . . . I just—you know, I'd just like you to consider everything that Mr. Lyons had to say." [DE 79 at Page ID # 348].

To Ayala's point, Lyons was clearly aware that Ayala suffered from mental health problems. Lyons requested Ayala's psychiatric records to prepare for sentencing. [DE 105-1, Aff. of Lyons, ¶ 10, at Page ID # 897]. Lyons discussed Ayala's mental health issues and substance use disorder with the Court at Ayala's sentencing, arguing the Court should consider those as mitigating factors in crafting a sentence:

4

> My point is pretty simple. Mike has some pretty significant mental health problems. Properly medicated, perhaps he would have had a chance at recovery, but I don't think that that actually got accomplished.
>
> The other issue is his very severe drug addiction, which he's had since he's been 14 years old. I don't need to go through the litany of substances he's been abusing, but he's been abusing alcohol to crack cocaine to cocaine to pills all his life.
>
> I think the combination of those two things certainly don't lessen the severity of the type of crime that we've got here, but they do shed some light on the motivations and the -- sort of the lack of impulse control that Mr. Ayala suffers from.

[DE 79 at Page ID # 343-44].

Mental illness and substance use disorder, however, are not equivalent to mental incompetency under 18 U.S.C. § 4241(a).  "Although there is some suggestion in the record that the defendant is currently under psychiatric care, even if [he] were mentally ill, '[i]t does not follow that because a person is mentally ill he is not competent to stand trial.'" *United States v. Davis*, 93 F.3d 1286, 1290 (6th Cir. 1996).  The fact that Lyons was aware that Ayala had mental-health issues does not make Lyons' decision not to move for a competency evaluation ineffective assistance of counsel.  As reflected in his Affidavit, Lyons' experience with Ayala during his six-month representation was that Ayala "never displayed any conduct which would cause counsel to believe that he did not understand the proceedings against him, was confused about the charges (or potential penalties), or demonstrated an inability to fully comprehend and intelligently participate in his own defense."  [DE 105-1, Aff. of Lyons, ¶ 8, at Page ID # 896].  Based on Lyons' Affidavit and a review of Ayala's statements in the record, the Court finds Lyons had no reason to believe Ayala was "suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the

5

proceedings against him or to assist properly in his defense[,]" and, thus, was not ineffective for failing to make a motion for a competency evaluation.[1]

Likewise, Ayala suggests he should not have been held responsible for his criminal behavior at the time of the crime, and that Lyons was ineffective for failing to raise that issue. It appears that Ayala believes Lyons was ineffective because he did not file a notice of an insanity defense pursuant to Fed. R. Crim. P. 12.2, which would have likely either prompted the government to move for a mental competency examination under 18 U.S.C. 4241 or the Court to order such an exam *sua sponte*. Just as Lyons has no reason to move for a competency exam, he had no reason to file a Rule 12.2 notice in this case. Lyons recalled that Ayala "never claimed that he committed the robbery but, at the time, was suffering from a mental condition or defect alleviating him of criminal responsibility[.]" Instead, Ayala, as he does in his § 2255 motion, focused on his claims of actual innocence, the lack of physical evidence linking him to the crime, and an alibi witness as his defenses. [DE 105-1, Aff. of Lyons, ¶ 10, at Page ID # 897]. Lyons was not ineffective for failing to raise a Rule 12.2 defense where he had no reason to believe it was appropriate and his client specifically requested he pursue other defenses.

---

[1] Within his ineffective assistance claim on this ground, Ayala suggests that the Court should have *sua sponte* ordered a competency evaluation of him because the trial judge was extremely familiar with Ayala's mental health history. [DE 96 at Page ID 845, ("Perhaps, the Court can also go on record as to why it did not order one?) (emphasis in original)]. 18 U.S.C. § 4241(a) requires a court to order a competency hearing "on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Although Ayala does not raise this as a separate ground for relief, a review of the entire record, including the transcripts and Lyons' Affidavit, evidences there was no reasonable cause for the Court to believe Ayala was presently suffering from a disease or defect that would necessitate a competency hearing and psychological examination. Most importantly, Ayala did not raise this issue on direct appeal, thus "the claim is procedurally defaulted", and the Court need not consider it further. *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001).

**2.     Spousal Privilege**

At trial, the Court allowed the United States to play portions of a telephone call that Ayala's then-wife, Diana Palmer ("Palmer"), received from Ayala while he was at the jail. Unbeknownst to Ayala, Palmer was being interviewed by law enforcement as part of the investigation. Palmer put the phone on speakerphone so that the law enforcement officers could record their conversation.

On direct appeal Ayala argued that the trial court committed a plain error by making the "factual assumption that signs in the jail stated that calls might be monitored" when "there was no evidence in the record supporting the court's conclusion regarding signage, and the Court never inquired as to whether Appellant made the call from the booking area or from the housing area." [Brief of Defendant-Appellant, *United States v. Ayala*, (No. 17-6023) 2017 WL 6988019 at *43 (6th Cir. 2017)]. Ayala, now having latched onto that argument, states that his call to Palmer did originate from the jail phone reserved for attorney calls in the booking area, not the phone in the housing unit. He argues that Lyons was ineffective for failing to do his due diligence to determine where the call originated.[2] Regardless of the Court's assumptions about where Ayala made the call, Lyons vigorously objected to the inclusion of the phone call based on spousal communication privilege. He filed a Motion in Limine to exclude introduction of the recording of the phone call [DE 28], on which the Court held a hearing [DE 47], and objected, repeatedly, to the introduction

---

[2] "There are three prerequisites to the assertion of this privilege. (1) At the time of communication there must have been a marriage recognized as valid by state law; (2) the privilege applies only to utterances or expressions intended by one spouse to convey a message to the other, [. . . ] and (3) the communication must be made in confidence." *United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir. 1993) (internal citations and quotation marks omitted). The question before the trial court was only whether the third requirement was met when Palmer took Ayala's phone call from the jail on speakerphone.

7

of the recording during trial. Ultimately, Lyons was successful in limiting how much of the recording the jury heard at trial. [Transcript, DE 85 at Page ID # 567-70].

Assuming that Ayala is being truthful in his assertion that he made the phone call to Palmer on the phone in the booking area, Lyons cannot be held responsible for information Ayala did not convey to him. If Ayala recalled this detail in 2019 when he drafted his § 2255 motion, he should have raised that issue with Lyons or the Court at the hearing on the Motion in Limine or the trial. Ayala does not allege that he communicated to Lyons anything about what phone he used to call Palmer; Lyons likewise stated "Ayala never informed counsel that the phone call originated in the 'booking area.'" [DE 105-1, Aff. of Lyons, ¶ 14, at Page ID # 899]. Lyons vigorously pursued the issue based upon his understanding and Ayala's communication of the facts. He is not ineffective because he did not read Ayala's mind.

### 3. **Discovery Materials**

Ayala claims Lyons failed to provide all the discovery materials to him prior to the trial. Ayala's entire statement of this ground for relief is as follows:

> Attorney Lyons did not provide all photographs to me as part of discovery. Possibly because some were on DVD provided. Inmate Services at Fayette Co. Jail – Ms. Donreesha Talbot can verify that DVD provided by Lyons was wrong format. Attorney Lyons stated to me he had "no time" to come and allow me to view on his computer. I believe this Court encountered the same problem when jury wanted to watch surveillance videos in Jury room. If not, then Attorney Lyons [sic] failure to provide discovery mislead me as to quality of surveilance/video [sic] and proximity of me to Diana Palmer.

[DE 96 at Page ID # 849].[3] Lyons disputes Ayala's recitation of the events. Lyons attached two letters to his Affidavit evidencing the discovery he provided Ayala via postal mail on April 10,

---

[3] There were two videos possibly in the United States' possession: one, from Rite Aid that depicted the robbery (introduced into evidence at trial) and one from Wal-Mart depicting Ayala and Palmer disposing of evidence in Wal-Mart's trash can (not introduced into evidence). This ground for relief does not make it clear whether Ayala did not view the Rite Aid video, the Wal-Mart video, or both.

8

2017, and April 17, 2017. [DE 105-2 and 105-4]. Ayala does not dispute that Lyons provided a number of documents and photographs to him, but argues that he did not receive "relevant stills" that the government would use at trial and that he never had an opportunity to view the surveillance videos that showed Ayala and Palmer disposing of evidence. [DE 109 at Page ID # 942]. Ayala claims he was prejudiced as a result of not being able to view some of the photographs the United States produced in discovery because it "deprived [him] of the ability to understand the true nature of the U.S.A.'s case against [him]" and enter into a plea agreement that would have resulted in a significantly lower term of incarceration. [DE 109 at Page ID # 942]. Ayala specifically mentions the government's plea offer of 100 months on the second day of trial. However, the surveillance video depicting the robbery was played in open court the day before the government's 100-month offer. [DE 85 at Page ID # 699]. Thus, assuming Ayala never viewed the robbery video prior to trial, he had viewed the video at the time the government made that offer. The record does not reflect that the video of Ayala and Palmer disposing of evidence was entered into evidence at trial; four still photos from the video were introduced as government exhibits. [DE 55, Government's Ex. 6, 6-17, 6-18, 6-51, 6-52].

Ayala's claim fails both *Strickland* prongs. First, he does not show that Lyons' performance fell below an objective standard of reasonableness. Ayala admits Lyons mailed discovery to him but complains there were some still photographs taken from the video that Lyons also mailed him that he did not receive. [DE 109 at Page ID # 942]. Ayala further admits that Lyons mailed him the surveillance videos, but that the technology at the jail did not allow Ayala to view it in the format Lyons provided to Ayala. [DE 109 at Page ID # 942]. From Ayala's own account, corroborated by Lyons' letters to Ayala, Lyons provided discovery to Ayala well in

9

advance of trial, and only due to a technological issue was Ayala unable to view the DVDs provided. Certainly, Lyons' performance cannot be deficient based on these facts.

As to the second *Strickland* prong, Ayala has failed to show that there was a "reasonable probability that . . . the judicial outcome would have been different[]" had Lyons provided the discovery Ayala alleges he withheld. *Strickland v. Washington*, 466 U.S. 668, 694-95 (1984). There is no proof that Ayala would have accepted a plea offer if he had seen the video(s) or photos earlier—even Ayala describes the chances that this would have changed the course of his case as only "very possible." [DE 109 at Page ID # 843]. Further, there is no evidence he was offered a binding plea agreement or that the United States offered to dismiss one of the counts against him. Even if he had seen the discovery he claims Lyons withheld, and even if that evidence motivated him to plead guilty, he could have still received a sentence of 150 months and likely been unable to appeal his sentence.[4] [DE 79 at Page ID 340; Guidelines Range affirmed by Sixth Circuit, see DE 90]. Because he's failed to meet the *Strickland* standard Court should deny Ayala's motion for relief on this ground.

### 4. Cell Phone Records

The Court has some difficulty understanding the claim Ayala makes regarding the cell phone records that the United States used to show he was in the vicinity of the pharmacy at the time of the robbery. It appears Ayala argues Lyons was ineffective to failing to investigate the cell phone records to discover there was a discrepancy in the time zones in the records. Ayala argues Lyons did not discover this until the middle of trial, discussed his error with Ayala, and

---

[4] If the Court had granted Ayala three acceptance of responsibility points for his guilty, his Offense Level would have been 25 rather than 28. UNITED STATES SENTENCING GUIDELINES MANUAL § 5A. With his criminal history category VI, his Guidelines Range would have been 110 to 137 months *on each count*. The statutory maximum on each count was 240 months. Ayala stated the plea offer on the second day of trial was "not conditional," imply that he would have had to waive his appeal rights to accept the

10

used the information to obtain a plea offer from the United States. [DE 96 at Page 851]. Lyons recalls the events slightly differently, stated that "there was some initial confusion about the times listed on the cell tower records and the need to convert those to UTC, but those discrepancies were noted prior to trial. . . . Ayala is correct that a plea offer was made to him during the trial itself." [DE 105-1, Aff. of Lyons, ¶ 19-20, at Page ID # 900]. The trial transcript reflects that Lyons cross-examined the cell phone expert on the accuracy of the records, whether he knew who possessed the phone on the date of the robbery, and the time of the calls. [DE 85 at Page ID # 641-47]. Assuming that Ayala's version of events is accurate, Ayala fails to show he how suffered any prejudice from a mistake that Lyons made, corrected prior to cross-examination of the applicable witnesses, *and* leveraged into a plea offer from the government. Accordingly, this ground for relief should be denied.

### 5. Jury Deliberation

Ayala argues Lyons was ineffective for failing to object on the record to the jury deliberating in his presence. [DE 96 at Page ID 852]. According to Ayala, the Court brought the jury into the Courtroom to view the surveillance video of the crime in Ayala's presence. He claims this failure to object deprived him of his opportunity to raise the issue on appeal. There is no transcript in the record of the jury's viewing of the surveillance video; however, Ayala does not suggest that any actual discussions occurred, only that the jury viewed the video in his presence, several jurors pointed to the video screen and gestured to one another, and Lyons did not object. {DE 109 at Page ID # 945]. Even if some sort of deliberations did occur, Ayala fails to demonstrate how he was prejudiced by Lyons' failure to object to them. Ayala implies he was prejudiced because he was the only defendant in the room for the jury to compare to the individual seen in the surveillance video. This was also true, however, when the jury watched the video the first time he was shown during the government's case-in-chief. This would have been true if the jury had

11

watched the video in the jury room and compared the individual to their memory of Ayala from seeing him in the courtroom earlier that day. No prejudice flowed from Ayala being in the courtroom while the jury viewed the surveillance video. A showing of prejudice requires a "reasonable probability that, but for counsel's unprofessional errors, the judicial outcome would have been different." *Strickland v. Washington*, 466 U.S. 668, 694-95 (1984). Ayala has failed to make such a showing; thus, this ground for relief should be denied.

### 6. In-Court Identification

Ayala claims Lyons did not object to Palmer's in-court identification of him in the photos and surveillance videos. [DE 96 at Page ID 853]. The record reflects that Lyons filed a Motion in Limine to Exclude Pretrial and In-Court Identification of Defendant [DE 37] and argued that motion at a hearing. [DE 47]. Although Lyons did not object at the trial when Palmer made the identification, he previously had fully litigated and preserved the issue for appeal by filing the Motion in Limine.[5] Having lost the motion, Lyons may have had a myriad of reasons for not re-raising a losing objection at trial. "Strategic decisions of defense counsel are 'virtually unchallengeable.'" *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 849 (6th Cir. 2017) (quoting *Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001)); *see also Goldman v. Anderson*, 625 F.2d 135 (6th Cir. 1980) (stating that a failure to object, when it is a tactical decision by counsel, without more, will not provide a basis for habeas relief.). Further, Ayala cannot show that he

---

[5] Ayala raises an issue regarding Palmer's identification of a pair of sunglasses. Ayala argues the Court specifically forbade Palmer from making such an identification, but the record does not support his contention. [DE 85 at Page ID # 587 (Court holding the photograph of Ayala in sunglasses provided by Palmer was "perfectly admissible.")]. Additionally, on direct examination, Palmer testified only that she recognized Ayala from the robbery surveillance video because of "the beanie he's wearing, the aviator glasses, and the shoes, and the pants." [DE 85 at Page ID # 681]. Palmer never testified that the sunglasses in the video were the same sunglasses at the ones in the photograph, which was Lyons' objection at trial and appears to be Ayala's issue on this point.

suffered any prejudice by Lyons' decision not to object at trial, where Lyons had previously objected and preserved the issue for appeal. Ayala is not entitled to any relief on this ground, as it is clearly refuted by the record.

### C.     APPELLATE ATTORNEY JESSICA WINTERS

The *Strickland* test applies to Ayala's appellate counsel, Jessica Winters ("Winters") just as it does to his trial counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Ayala raises one claim of ineffective assistance of counsel against his appellate attorney Jessica Winters ("Winters"). His entire ground for relief related to Winters is as follows:

> Attorney Winters Appellate Attorney mis-stated the very fact her whole argument hinged upon when arguing the dangerous weapon claims 3 point/level enhancement at sentencing. Attorney Winters basically made a huge mistake and "mis-stated" the argument in her brief to the 6th Circuit. Revolver v. Handgun. This deprives me of meaningful appelate [sic] review. Someone should be appointed to see if Attorney Winters's [sic] missed anything else that could've been appealed on direct.

[DE 96 at Page ID # 848]. Ayala seems to be referencing a minor error in the appellate brief. In the section challenging Ayala's sentencing enhancement for brandishing or possessing a firearm during the crime, Winters wrote that Palmer testified she saw Ayala with a "revolver," when in fact, Palmer testified: "it wasn't a revolver. It looked like a normal gun." [[Brief of Defendant-Appellant, *United States v. Ayala*, (No. 17-6023) 2017 WL 6988019 at *47 (6th Cir. 2017)]; DE 85 at Page ID # 657].

Once again, this ground for relief fails the second *Strickland* prong.[6] This error made no difference in the outcome of Ayala's appeal. Winters thoroughly presented the issue of whether the sentencing enhancement was appropriate, and the Court of Appeals thoroughly addressed it, specifically recognizing the error. [DE 90 at Page ID # 822 ("On this point, Ayala misstates

---

[6] The Court believes such a trivial error also fails the first *Strickland* prong.

13

Palmer's testimony: Palmer in fact testified that the firearm was *not* a revolver.")]. The Court of Appeals, after acknowledging the error, rejected Ayala's argument, analyzed the issue, and affirmed the trial court's sentence. [DE 90 at Page ID # 822-23]. "Some errors will have had a pervasive effect . . . and some will have had an isolated, trivial effect. . . . [A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. *Strickland v. Washington*, 466 U.S. 668, 695–96 (1984). The Court of Appeals reviewed the record, understood Palmer's testimony, and ruled accordingly. Ayala has not presented any information to the contrary that justifies relief on this ground.

### III.    CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") shall issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473,484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of the Defendant's § 2255 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further.

14

*See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is **RECOMMENDED** that a certificate of appealability be **DENIED** upon the District Court's entry of its final order in this matter.

### IV.    RECOMMENDATION

For all of the reasons stated above, the Court **RECOMMENDS** that:

1. the District Court **DENY**, with prejudice, Defendant's § 2255 motion [DE 96]; and

2. the District Court **DENY** a certificate of appealability as to all issues, should movant request a COA.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b) (1), Fed. R. Civ. P. 72(b), Fed. R. Crim. P. 59(b), and local rule, within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this the 3rd day of August, 2020.



Signed By:
Matthew A. Stinnett    MAS
United States Magistrate Judge